PENNSYLVANIA STEEL CO. et al. v. NEW YORK CITY RY. CO. et al.
(and three other causes).

(District Court, S. D. New York. November 27, 1914.)

Nos. 2–9, 2–33, 2–149, and 3–37.

STREET RAILROADS ⬤⟶49—LEASE—LIABILITY OF LESSEE.

In a lease of a street railroad system, which operated as an assignment of prior leases under which the lessor held certain lines of the system, the lessee covenanted to make good any deterioration in the property leased, and also in effect to perform the conditions of the prior leases, which contained similar covenants with respect to deterioration, so long as its own lease continued in force. On the termination of such lease by the insolvency of both parties and the appointment of receivers for both, the lessor's receivers surrendered its leased lines to the original

lessors, who were subsequently awarded damages under the deterioration clause in their leases, which were made charges against the estates of both their lessee and its assignee. *Held*, that as to such damages the assignee was the principal debtor and its lessor the surety, and that on an accounting between their receivers the lessor was entitled to recover the amount it should be required to pay in dividends to its own lessors; such amount, however, to be paid in full, and not merely allowed as a claim against the insolvent estate of the lessee.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 125, 126; Dec. Dig. ☞49.]

In Equity. Suit by the Pennsylvania Steel Company and another against the New York City Railway Company and others. In the matter of the claim of the Metropolitan Street Railway Company against the New York City Railway Company. On settlement of decretal order.

For former opinion, see 217 Fed. 423.

LACOMBE, Circuit Judge. When the special master's report came up for confirmation, the items of damage were separately discussed. In one group there were included deterioration of track, etc., on the lines owned by the Metropolitan or held by it under leases which had not been terminated by receivers and the lines returned to lessors. In another group there were included the like deteriorations on the lines such as Second Avenue and Central Park, which had been thrown off from the system during receivership. Apparently these were separately presented and discussed, because the Court of Appeals had held that the leases of those lines had been assigned to the New York City Company, and had sustained claims of those lessor roads for deterioration against the estates of both defendant companies.

By reason of this circumstance the court's attention was given exclusively to a consideration of the respective obligations of the companies arising merely under assignment of the several leases. The conclusion was that the Metropolitan could prove against the City Company only such sum as it might itself actually pay to each lessor company for deterioration. As neither estate is solvent, the result would be that the Metropolitan could prove only the amount of the dividend each lessor company obtained from its estate, but that dividend, being proved against an insolvent's estate, would be itself scaled down and become, in cash recoverable, only a part of the cash the Metropolitan will have to pay out.

This seems inequitable, and attention has now been called to the clauses in the Metropolitan-City lease under which claims for deterioration of the owned lines were liquidated. These claims were overlooked by this court when the claims arising on these segregated leased lines were being considered. They were broad enough to cover leased lines as well as owned lines, and would justify the liquidation of Metropolitan claims against City Company for deterioration equal to the full amount of such deterioration. This result, however, would be inequitable, because the dividend which the Metropolitan estate will pay to its general creditors will be less than the dividend which the City Company

will pay to its general creditors. In consequence, the Metropolitan estate would receive from the City estate more than it will pay out to the lessor claimants.

It is now suggested that an equitable disposition of the matter will be to decree that the Metropolitan estate shall be paid from the City estate the precise sum in cash which the former may have to pay to these lessor claimants. There seems to be no serious objection to such disposition of these claims, and the decretal order may be so framed as to provide for it.